### THE STATE *v.* JOHNSON, Walk. Miss. Rep., 392.

An indictment commencing with the words "The State of Mississippi" and concluding "against the peace and dignity of the same," is sufficient.

If the words "then and there" precede every material allegation, it is sufficient, though these words may not precede the conclusions drawn from the facts.

If the accused pleads not guilty, and proceed to trial, he waives the privilege given him by statute of having a copy of the indictment and venire two days before the trial.

A juror being examined on his *voire dire*, was asked, "Have you formed an opinion as to the guilt or innocence of the prisoner at the bar?" Answer, "I have." "Have you formed or expressed that opinion from common report, or from the witnesses, or either of them?" Answer, "From common report only. I have never heard any of the witnesses say anything on the subject." "Will anything you have heard respecting the prisoner, have any influence on your mind, as a juror, in determination of this cause?" "It will not. I feel free to decide the case according to the evidence which may be produced on the trial:" *Held*—Such an individual is a competent juror.

It is not necessary, to exclude a juror, that he should have formed and expressed his opinion against the accused, with malice or ill-will; but a mere hypothetical opinion, from rumor only, and subject to be changed by the testimony, does not disqualify.

If a juror has formed a fixed opinion, he ought to be excluded, though he may never have expressed that opinion.

*R. M. Gaines,* attorney general.

The formation and expression of an opinion does not disqualify a juror, without express favor or express malice. The English authorities on this point are full and uniform. Co. Litt., 157, *a*; Trials *per pais,* 185, 189; 4 Hawk., b. 2, ch. 43 § 28; 3 Bacon, 757; 1 Chitty, Cr. Law, 442, top of page; 4 B. & A., 470; 6 Eng. C. L. R., 502. In this country the same doctrine is sanctioned by the highest authority; and no case can be produced which overrules it. The case in Cowen goes further, perhaps, than any other that can be produced. But, on examination, the case at bar will be found not to come within the rule laid down in that case. Burr's Trial, 416; 6 Cowen, 557; 7 ib., 108.

In the case in Cowen, (6 Cowen, 557,) the juror stated that he had been present at a former trial, and heard all the evidence, and had made up his opinion, perfectly, that the defendants were all guilty; and had frequently expressed it. 4 Wend. 240–4.

As to a hypothetical opinion, see 8 Johns., 445; Case in Va., 5 Am. Dig., 181, § 120. As to the necessity of the case, 1 Burr's Trial, 419. Abuse of discretion is no ground of error. Flower's case. Supra 318.


*E. & F. Huston* for defendant.

Making up and expressing an opinion as to the guilt or innocence of the prisoner, disqualifies a juror. In all the English books, this is laid down as a general rule. There is considerable contrariety of opinion as to its application to particular cases. This difference of opinion will be found, on examination, to grow out of the exercise of discretion in the triers or judges; a discretion now controlled by the emphatic language of our constitution. 1 Johns., 316; 7 Cowen, 121; 1 Burr's Trial, 414; 3 Bacon, 756; 4 Hawk., b. 2d, chap. 43, § 28.

Favor or ill-will is not necessary to be proved. 6 Cowen, 564; 7 ib., 128.

Making up and expressing an opinion upon rumor, disqualifies, etc. 7 Burr's Trial, 370; 4 Wend., 241.

For definition of impartiality or indifference, see 7 Cowen, 122.

The law attaches the disqualification to the forming and expressing of an opinion ; and does not go beyond, to examine the occasion, or weigh the evidence on which that opinion is formed.  4 Wend., 242 ; 1 Burr's Trial, 419.  Expression of an opinion indicates bias.  6 Cowen, 465 ; 7 ib., 128.

The disqualifying bias which the law regards, is one which, in a measure, operates unconsciously on the mind of the juror, and leads him to indulge his own feelings, when he thinks he is influenced by the weight of evidence.  4 Wend., 245 ; 1 Chitty Cr. Law, 544 ; 3 Bacon, 756.

Making up and expressing an opinion, is a principal cause of challenge ; and the judgment of the inferior court is revisable on error.  4 Wend., 204, *et seq. ;* 1 Cowen, 432 ; 6 ib., 564 ; 7 ib., 121 ;  King v. Edwards, 4 Barn. & Ald. 470 ; 7 Cowen, 125–129 :

" Common law required the juries to be brought from the vicinage, because they were supposed to know the facts, etc. But by statutory provisions, and legal adjudications, this is changed, because it is found that such jurors were apt to intermix their prejudices and partialities in the trial of right."  3 Black. Com., 390.

The inference to be drawn is that, as at common law, there certainly was a principal challenge allowed for express malice, or express favor.  See 1 Co. Litt., 157 *a*, 157 *b ;* 3 Black. Com., 363 ; 4 Wend., 229.  The prejudices and partialities which arose from a knowledge of the facts ; or (7 Cow., 127), a part of the fact ; or from rumors, etc. (for all these may cause prejudice), were held by Blackstone in his time.  8 Johns., 445 ; 6 Cowen, 554 ; 7 ib., 122, cited and commented upon.

The juror's expression of a willingness and capacity to do justice, etc., is not to be relied on.  Where there is cause to suspect a bias of mind, etc., the law will not trust a juror, etc. 4 Wend., 244.

The question to be tried on challenge of a juror is, whether he stands altogether indifferent, as he stands unsworn.  1 Chitty, Cr. Law, 544 ; Co. Litt., 157 *b* ; 3 Bacon, 756.

It is better to trust a juror who has made up and expressed

an opinion, than one who makes it up on rumor.  1 Burr's Trial, 370 ; 4 P. William, 242.  The formation and expression of an opinion, by a juror, is, of itself, evidence that he does not stand indifferent.

NICHOLSON, J. :

This case is brought before us by a writ of error to the circuit court of Greene county.

There are four assignments of error :

First, That the indictment is not drawn in conformity to the constitution, which requires that the style of all process shall be : " The State of Mississippi," and all prosecutions shall be carried on in the name, and by the authority of the " State of Mississippi ;" and shall conclude " against the peace and dignity of the same."

The second assignment is, that the words " then and there" are wanting before the words " feloniously, wilfully, and of malice aforethought," in the concluding part of the indictment.

The third assignment is, that it does not appear by the record, that a copy of the indictment and a list of the venire was furnished the accused two days previous to his trial.

And the fourth assignment, which is embraced in the bill of exceptions, is, that the court erred in deciding that Matthew Moody was a competent juror to pass upon the trial of the prisoner.

A passing remark is a sufficient notice of the first assignment.

The indictment commences with " the State of Mississippi," and concludes " against the peace and dignity of the same."

This has been considered sufficient, according to the practice of fourteen years under the constitution.  The assignment, I consider, however, as having been abandoned by the counsel, inasmuch as it was not insisted on in the argument.

The second assignment is equally untenable.  If the words " then and there " preceded every material allegation, it is sufficient ; and, in drawing the conclusion from the preceding facts, these words may be omitted ; 3 Chitty's Criminal Law, 736-7, 751.

The third assignment is, That it does not appear from the record that a copy of the indictment and a list of the venire was furnished the prisoner two days before his trial. But it appears from the record in this case, that on finding the indictment, the court ordered a venire of one hundred jurors to be summoned, returnable on Thursday following; that on Thursday, a venire of fifty more were ordered; after which the case was continued till the next term.

At the subsequent term, on the first day of the term, a venire for thirty-six jurors was issued, returnable on the next day.

At the preceding term he had pleaded not quilty, and, although the trial began on Tuesday, and although this is a privilege which the law, in its benignity, extended to criminals in capital cases, yet it is a privilege which the prisoner may waive; and his pleading not guilty, and not having claimed this privilege, amounts to a tacit waiver, and he cannot afterwards take advantage of it; for his pleading has caused the objection; Chitty's Crim. L., 405; 4 Hargrave's St. Trials, 746. There is no error, then, in the third assignment.

The fourth and last assignment of error, is, that the court erred in deciding that Matthew Moody was a competent juror to pass upon the trial of the prisoner. The juror was sworn on his *voir dire,* and the court interrogated him as follows: " Have you formed or expressed an opinion as to the guilt or innocence of the prisoner at the bar?" *Answer:* "I have." *Question:* "Have you formed or expressed that opinion from common report, or from the witnesses or either of them?" *Answer:* "Common report only. I have never heard any of the witnesses say anything on the subject." *Question:* "Will anything you have heard or said respecting the prisoner have any influence on your mind as a juror, in the determination of this case?" *Answer:* "It will not. I feel free to decide the case according to the evidence which may be produced on the trial."

Upon which the court decided that he was a competent juror.

The question which is raised by this exception is one of great import, not only to the accused but to the community at large. The great difficulty of laying down a fixed and determinate rule in the selection of jurors, by which the guilty may be punished and

the innocent acquitted, has agitated the courts for centuries back.

The old English authorities laid down the rule, that, to incapacitate a juror from sitting upon the trial, he must have formed and expressed his opinion against the accused, with malice or ill-will. This rule has been much softened, and, indeed, such is not the doctrine in the courts of this Union, although the common law is opposed to trying an individual by men who have prejudged his case; yet, in most of the States of the American Union, we have constitutions which guarantee to the accused a fair and impartial trial.

Lord Coke has laid down the rule that a juror must stand inindifferent, as he stands unsworn; Coke Litt., 155.

By the constitution of Mississippi, declaration of rights, section 10, a speedy public trial by an impartial jury of the country is given to the accused. But how are we to ascertain the fact whether a juror stands indifferent between the parties?

This must either be drawn from the juror on his *voir dire* or shown by evidence *aliunde*.

I believe the first important decision on this subject in the American courts, is to be found in the trial of Col. Burr for high treason.

The decision of Chief Justice Marshall in that case, has been looked to by the State courts as the pole star by which they were to be guided.

Judge Marshall says (Burr's trial, 1, vol. 44), "that to have formed and delivered an opinion was sufficient to exclude from the jury, but that slight impressions on the mind are not sufficient."

In the case of Vermilyea, *ex parte*, 6 Cowen, 563, Justice Woodworth says: "That to have formed and expressed an opinion from a knowledge of the facts is good cause of challenge." And the learned judge goes on and says, that it cannot be material from what source the opinion is derived; if the bias proceeds from a preconceived opinion, it equally affects the accused.

Chief Justice Spencer, in the case of Vanalstyne, decided, that if a juror had formed and expressed his opinion from a

knowledge of the facts, or from the information of those acquainted with the facts, it was good cause of challenge; but if the opinions of jurors were formed on mere rumors and reports, that such opinions were not sufficient to disqualify. On an application for a new trial in the case of Fries, Judge Iredell put the question on this ground, "that whenever a predetermined opinion is formed, from whatever motives, it creates an improper bias, extremely difficult to get rid of." And the same doctrine is held forth by Justice Maxcy in the case of the People v. Mather, for the abduction of William Morgan. 4 Wendell, 229.

The rule, then, to be drawn from these authorities, I think, amounts to this, that if the juror has made up and expressed an opinion, either from a knowledge of the facts, or from the information of those acquainted with the facts, or a decided opinion from report, that he does not stand indifferent between the parties and should be excluded from the jury; and the situation of the juror must be ascertained by triers appointed for that purpose, or by the court, and when referred to the court it stands as a demurrer to evidence.

In the case of Flowers, decided in this court, December term, 1829, I am satisfied that I went too far in laying down the rule, with respect to the examination of the juror on his *voir dire*. I there stated, that if the juror, on being interrogated, answered *positively* and *affirmatively*, that he had formed and expressed his opinion, the court should set him aside without further inquiry. Since the decision of that case, I have presided on the circuit at the trial of seven capital cases, and experience has fully satisfied my mind, that jurors frequently answer the question without understanding its true meaning.

It is frequently the case, that a juror, who has barely heard the case from report, and has but a slight impression on his mind, will answer affirmatively, that he has formed and expressed opinions, but upon further examination, it will be discovered to amount only to a *hypothetical*, and not a *decided* opinion. In fact, there are but few jurors who understand the difference between a fixed and predetermined opinion, and a hypothetical one. Besides, much is often ascertained from the manner in

which the juror answers the questions: whether he shows a sober indifference, an agitation of feeling, or signs of ill-will. In fact, it is almost impossible, from the nature of things, to lay down any *invariable* rule on this subject.

From the necessity of the case much must be left to the discretion of the presiding judge, who is "*pro hac vice*" of counsel for the accused, to see that he has a fair and impartial trial. Let us apply the law as laid down, to the case, as shown by the bill of exceptions. The juror, Matthew Moody, was asked if he had formed or expressed an opinion, as to the guilt or innocence of the accused; he said he had; he was then asked whether that opinion was formed from report, or from hearing the witnesses; he said from report only, that he had never heard any of the witnesses say anything about it.

He was then asked, whether anything which he had heard or said, would have any influence on his mind in the determination of the case, as a juror; he said it would not, that he felt free to decide the case according to the evidence which might be introduced at the trial. It will be observed that the disjunctive conjunction is used instead of the copulative. The question is, have you formed, or expressed, instead of, have you formed *and* expressed. I have not been able to find a solitary case in the American decisions, where the form of interrogating has been practiced upon, which is set forth in this bill of exceptions.

The reason given in the books is, that a man who has made up his opinion, and expressed it aloud, will be much more apt to adhere to it, than if he had only formed it and kept it concealed.

This reason is not entirely satisfactory to my mind. I think if a juror has made up a fixed opinion from a knowledge of the facts, although he has kept that opinion locked up in his own breast, he is not a competent juror; but if he has only fashioned in his mind an opinion from report, and has not given utterance to that opinion, it would not be sufficient to exclude him.

It is uncertain from the bill of exceptions whether Moody had barely formed his opinion from report, or whether he had expressed that opinion. But I am willing to give to it its most

extended sense, and admit that he had both formed and expressed his opinion, and then taking all his answers together, to my mind it shows nothing more than a hypothetical opinion. If the report which he had heard was true, he thought him guilty; if it was not true, he thought him innocent. In fact, his answers taken altogether, show clearly that he had not formed a decided opinion. His opinion had extended no farther than the law. The law had said that if the prisoner had committed the crime of murder, he should be punished; and yet this law was competent to try him. And I will here premise, that when establishing rules by which the community is to be governed—whether in the legislative hall or on the judicial bench, we must lay down rules for man as he *is*, and not as he *should be.* And the idea of selecting jurors as pure and uncommitted as if they had just dropped from another planet at the moment of trial, is entirely Utopian.

When an outrageous crime is committed, it is immediately wafted on the swift pinions of rumor to every corner of the country, and men take up slight impressions which they frequently call opinions, but which readily yield to the evidence produced on the trial; and it is but rarely the case, that one of those rumor-formed opinions amounts to anything more than hypothetical. And if jurors are to be excluded, on whose minds slight impressions only are made, and that from report, we may as well blot out from our criminal code, all those crimes of deep and malignant dye; and I do not consider the establishment of such a rule as above laid down, in any way jeopardizing the rights of the citizen. There are so many safeguards thrown around the accused in this country, that there is no danger of innocence being punished. Every member of the community is interested in protecting the innocent.

Although in England, the venire belongs to the king, yet in this country it may be said to belong to the accused; and is so often the case, that it is made out with a view to the acquittal of the prisoner. And while we are cautious to protect the innocent, we must be careful not to let the guilty escape.

Neither do I think the establishment of the above rule at all in opposition to the true intent and meaning of the constitution.

The framers of that instrument certainly did not understand the words *impartial jury*, to mean anything more or less, than that the accused should not be tried by men who had prejudged his case; he is to be tried in the county where the offense is committed, and it is stretching presumption too far to suppose, that an atrocious deed can be committed and a jury obtained within the limits of the county, who have never heard of the transaction.

An impartial juror is one whose mind is open to receive the impression to be made by the testimony; one whose mind is poised upon the scales of indifference, and capable of weighing the testimony adduced on trial, in opposition to floating rumors.

I again repeat, that the case at bar, to my mind, shows nothing more than a hypothetical opinion; it amounts to the same thing as saying, if the reports were true, he thought the prisoner guilty, but if they were false, he thought him innocent. I am, therefore, of opinion that the court below did not err in deciding that Matthew Moody was a competent juror, and that the judgment below must be affirmed.

Judges Turner and Montgomery concur.